# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| ANTHONY SHEA<br>*Petitioner*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>*Respondent*. | ) ) ) ) ) ) ) ) ) ) | Case No. 16-cv-00235-PB |
| SEAN KING<br>*Petitioner*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>*Respondent*. | ) ) ) ) ) ) ) ) ) ) | Case No. 16-cv-00283-PB |
| ARTHUR DURHAM<br>*Petitioner*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>*Respondent*. | ) ) ) ) ) ) ) ) ) ) | Case No. 16-cv-00274-PB |
| LOUIS DIFAZIO<br>*Petitioner*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>*Respondent*. | ) ) ) ) ) ) ) ) ) ) | Case No. 16-cv-00-273-PB |

|  |  |  |
|---|---|---|
| RICHARD VILLAR | ) | |
|     *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-00272-PB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     *Respondent.* | ) | |

|  |  |  |
|---|---|---|
| TALBOT CURTIN | ) | |
|     *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-00271-PB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     *Respondent.* | ) | |

|  |  |  |
|---|---|---|
| GERALD BOULANGER | ) | |
|     *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-00266-PB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     *Respondent.* | ) | |

|  |  |  |
|---|---|---|
| JAMES KARAHALIOS | ) | |
|     *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-00254-PB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     *Respondent.* | ) | |

|  |  |
|---|---|
| JOHN BRENNICK ) | |
|     *Petitioner*, ) | |
| ) | |
| v. ) | Case No. 16-cv-00253-PB |
| ) | |
| UNITED STATES OF AMERICA, ) | |
|     *Respondent.* ) | |

|  |  |
|---|---|
| RAYMOND LEMIEUX ) | |
|     *Petitioner*, ) | |
| ) | |
| v. ) | Case No. 16-cv-00252-PB |
| ) | |
| UNITED STATES OF AMERICA, ) | |
|     *Respondent.* ) | |

|  |  |
|---|---|
| ANTHONY SAWYER ) | |
|     *Petitioner*, ) | |
| ) | |
| v. ) | Case No. 16-cv-00250-PB |
| ) | |
| UNITED STATES OF AMERICA, ) | |
|     *Respondent.* ) | |

|  |  |
|---|---|
| KEVIN LAVALLIERE ) | |
|     *Petitioner*, ) | |
| ) | |
| v. ) | Case No. 16-cv-00240-PB |
| ) | |
| UNITED STATES OF AMERICA, ) | |
|     *Respondent.* ) | |

| | |
|---|---|
| BARTON TIBANDO )<br>    *Petitioner*, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>    *Respondent*. ) | Case No. 16-cv-00233-PB |
| PAUL DIMEO )<br>    *Petitioner*, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>    *Respondent*. ) | Case No. 16-cv-00226-PB |
| NICHOLAS SPEARS )<br>    *Petitioner*, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>    *Respondent*. ) | Case No. 16-cv-00220-PB |
| DEREK KUCINSKI )<br>    *Petitioner*, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>    *Respondent*. ) | Case No. 16-cv-00201-PB |

|  |  |  |
|---|---|---|
| JOEL SHAW </br>     *Petitioner*, </br> </br> v. </br> </br> UNITED STATES OF AMERICA, </br>     *Respondent*. | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) | Case No. 16-cv-00197-PB |
| MATTHEW KARAHALIOS </br>     *Petitioner*, </br> </br> v. </br> </br> UNITED STATES OF AMERICA, </br>     *Respondent*. | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) | Case No. 16-cv-00286-PB |
| PATRICK CHASSE </br>     *Petitioner*, </br> </br> v. </br> </br> UNITED STATES OF AMERICA, </br>     *Respondent*. | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) | Case No. 15-cv-00473-PB |

**PETITIONERS'SUPPLEMENTAL MEMORANDUM**

    Petitioners in the above captioned matters respectfully submit through counsel this joint supplemental memorandum in response to the Government's Objection to Defendants' § 2255 Motions Seeking to Vacate § 924(c)(3)(b) Convictions (*Govt. Obj.* -), filed on July 28, 2016, and its Notice of Supplemental Authority, filed on August 3, 2016.   This memo addresses whether the residual clause in 18 U.S.C. § 924(c)(3)(B) is materially different than the residual clause in

5

the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e) (2)(B)(ii)), which *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) held to be unconstitutionally void for vagueness. It does not address the procedural arguments raised in the government's objection, which include that the petitioners' claims are time-barred, *Govt. Obj. pp 3-11*, and that their claims are procedurally defaulted, *Govt. Obj. pp 11-26,* nor does this memo address whether bank robbery or Hobbs Act robbery remain valid predicate crimes of violence under 18 U.S.C. § 924(c)(3)(A), *Govt. Obj. pp 27-30.***1**

The petitioners do not all share a common interest on the complex procedural arguments raised by the government. **2** Much could turn on the state of the law when a particular petitioner was convicted and sentenced. As the government discusses in its objection, a defendant who like the petitioners in this case seeks § 2255 relief from unpreserved error must demonstrate "cause and prejudice." *Govt. Obj. pp 12-26.* Constitutionally ineffective assistance of counsel can amount to sufficient cause to excuse a defendant's failure to timely preserve an argument. Whether that failure was deficient under *Strickland v. Washington*, 466 U. S. 668, 687 (1984), can depend on whether competent counsel would have preserved an argument that, although novel, was reasonably based on developing case law. *Reed v. Ross*, 468 U.S. 1 (1984). As the government notes, *Govt. Obj. pp 14-15* "cause" excusing procedural default in raising a claim includes that it is "so novel that its legal basis is not reasonably available to counsel." *Damon v. United States*, 732 F.3d 1, 4-5 (1st Cir.2013), *cert. denied* 134 S. Ct. 1328 (2014) (quoting *Reed*

---

**1**. The parties agree that the oral argument currently scheduled for August 8, 2016 should focus on whether or not the residual clause in 924(c) is unconstitutional for the same reasons as the ACCA residual clause invalidated by *Johnson II*.

2  The government notes in a footnote that Patrick Chasse's petition was filed within the one year statute of limitations in § 2255(f)

6

*v. Ross*, 468 U.S. at 16).   It could be argued that void for vagueness challenges to the residual clauses in 18 U.S.C. § 924(e)(2) (B)(ii), 18 U.S.C. § 16(b), and 18 U.S.C. § 924(c)(3)(B) became increasingly less novel after April 18, 2007, when Justice Scalia's opined in dissent that the ACCA residual clause was unconstitutionally vague. *James v. United States*, 550 U. S. 192, 211 (2007).   His June 9, 2011 dissent in *Sykes v. United States*, 564 U. S. 1, 15-16 (2011) buttressed that argument.   Petitioners Anthony Shea, Gerald Belanger, and Raymond Lemieux were sentenced before *James*, when the void for vagueness challenge was more novel than it was for petitioners Sean King, Arthur Durham, Anthony Sawyer, Kevin Lavallier, Paul Dimeo, Nicholas Spears, and Joel Shaw, who were sentenced after *James* and before *Sykes*.   James Karahalios was sentenced on December 21, 2011.   His brother Matthew was sentenced on April 2, 2012.  By the time that they were sentences many defendants were challenging the ACCA residual clause as void nor vagueness.   *Govt. Obj. p 15*.   The argument was no longer so novel.

   The government's arguments that bank robbery and Hobbs Act robbery remain valid "crime of violence" predicates under the Force Clause, *Govt, Obj.26-30,* are premature.   The petitioners' joint memorandum does not address that issue.   Before the Court does so, their counsel should have an opportunity to confer and then to file either joint or individual memoranda based in their individual clients' best interest.

   The government included with its objection copies of a <u>Memorandum Opinion</u> in *United States v. Le*, D. Md. 16 Cv 812, and the per curiam opinion in *United States v. Prickett,*, 8th Cir. 7/27/16.   With its <u>Notice of Supplemental Authority</u>, filed on August 3, 2016, the government provided *United States v. Hill*, a Second Circuit Court of Appeals opinion issued on August 3, 2016.

   Since the First Circuit Court of Appeals has yet to rule on whether *Johnson II*'s rationale

extends to the residual clause in 18 U.S.C. § 924(c)(3)(B), the parties cite opinions from other appellate and district courts. Petitioners submit that there is persuasive authority that there is no material difference between the ACCA and § 924(c) residual clauses. Like the ACCA residual clause, the § 924(c) residual clause must be construed under the well-established two-step categorical approach that the Supreme Court applied in *Johnson*. That approach demonstrates that § 924(c)'s residual clause suffers from the same constitutional infirmity as its ACCA counterpart. It is void for vagueness.

> I. **PETITIONERS' CHALLENGES ARE PROPER UNDER § 2255(f)(3) BECAUSE THE "RIGHT" THEY ASSERT WAS "INITIALLY RECOGNIZED" IN JOHNSON, HAS BEEN "NEWLY RECOGNIZED BY THE SUPREME COURT," AND HAS BEEN MADE RETROACTIVELY APPLICABLE TO CASES ON COLLATERAL REVIEW.**

The government essentially argues that Petitioners' claims are not ripe, for purposes of §2255(f)(3), unless and until the Supreme Court extends *Johnson*'s holding to the residual clause of §924(c)(3)(B). See *Government Objection* ("*Govt. Obj.*") at 3-11. The statute of limitations language at issue permits petitioners to file within one year of: "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). The government is mistakenly inserting a merits argument – whether Johnson invalidates § 924(c)(3)(B) – into a statute of limitations argument. The Court should reject its attempt to dramatically limit the availability of habeas actions under 2255(f)(3).

The "right" Petitioners assert was "initially recognized" in by the Supreme Court in *Johnson*, on June 26, 2015. The thrust of the government's argument is that a "right" cannot be considered to have been "initially recognized," under § 2255(f)(3), until the Supreme Court has ruled on the exact application of a rule that the petitioner's case presents. When, in a line of

8

cases, is a right considered "initially" or "newly" recognized, triggering a new limitations period under 2255(f)(3)? It may be easier to define when a right is not initially or newly recognized: "[I]t is axiomatic that a new right cannot be 'initially recognized' [within the meaning of § 2255(f)(3)] when the Court has merely applied its precedent to a particular factual setting." *United States v. Hopkins*, 268 F.3d 222, 225 (4th Cir. 2001). Thus, courts have denied the opportunity to pursue habeas actions, via a new limitations period, in the wake of Supreme Court cases that have merely interpreted or applied earlier cases. See, e.g., id. (Supreme Court's *Florida v. J.L.*, 529 U.S. 266 (2000) decision did not trigger a new one-year limitations period because the rule in J.L was not "newly recognized;" rather, it "resulted from the logical application of [the Supreme Court's] stop and frisk jurisprudence"); *United States v. Tush*, No. 99-20012-01-KHV, 2001 WL 309416, at *2 (D. Kan. 2001) (the Supreme Court's decision in Jones v. United States, 529 U.S. 848 (2000), was the initial recognition of a new right because it was the first decision to recognize that certain activities were insufficient to satisfy the interstate commerce requirement in 18 U.S.C. §844(f)(1)); *United States v. Valesquez*, No. Crim.A. 94-293, 1999 WL 280441, at *1 (E.D. La. May 3, 1999) ("[T]he Supreme Court did not recognize any 'new' right in Knowles [v. Iowa, 525 U.S. 113 (1998)]. Rather, it applied a well-established Fourth Amendment right to a particular situation."); *United States v. King*, 4 F. Supp. 3d 114, 120 (D.D.C. 2013) (*Lafler v. Cooper*, 132 S.Ct. 1376 (2012), did not announce a new right under § 2255(f)(3)) because it was "dictated by Supreme Court precedent" interpreting *Strickland*); *Turner v. Warren*, No. 05-72274, 2006 WL 1109300, at *5 (E.D. Mich. Apr. 26, 2006) (employing *Teague*'s "new rule" test – asking whether a rule "breaks new ground" or whether, instead, its result was "dictated by precedent" – and finding that *Bunkley v. Florida*, 538 U.S. 835 (2003) was a simple application of prior precedent and therefore did not "initially recognize"

9

any right under § 2244(d)(1)(C), the state custody analogue to § 2255); 3 *cf. Kerman v. City of New York*, 261 F.3d 229, 236 (2d Cir.2001) (warrantless entry into an apartment) did not establish a new rule of constitutional law for qualified immunity purposes because it was a "logical extension" of *Alabama v. White*, 496 U.S. 325 (1990) (investigatory stop of a vehicle)).

The government asserts that Petitioners cannot proceed with their claims now, but assures them, self-servingly, that "Once [Johnson] is extended [to § 924(c)], creating a 'new rule,' the statute of limitations in § 2255(f)(3) will begin to run upon the announcement of that new rule (assuming it is retroactive)." *Govt. Obj.* at 9. Yet the government has absolutely no evidence to support this bald contention that any future application of *Johnson* to the residual clause of §924(c)(3)(B) will be considered a "new rule" or a new "right." The government will be the first to take the opposite position once that future decision happens.

To the contrary, *Johnson* is the genesis, for 2255(f)(3) purposes, of the new right that Petitioners assert. Overruling multiple Supreme Court precedents, *Johnson* ruled that a residual clause that requires courts to undertake a doubly-indeterminate inquiry – combining the ordinary case approach with an unknown quantum of tolerable risk – invites such arbitrary enforcement as to violate the Constitution's guarantee of Due Process. Future applications of Johnson, whether to identical residual clauses (e.g., the residual clause of the U.S. Sentencing Guidelines), or to residual clauses with slightly different wording (e.g., 18 U.S.C. §§ 924(c)(3)(B) and 16(b)), will be just that: applications of the rule in Johnson "to a particular factual setting." *Hopkins*, 268 F.3d at 225. *Beckles*, for example, see *Govt. Obj.* at 7, asks the Supreme Court to apply Johnson

---

3 It is unclear whether a new "right" under § 2255(f)(3) is coterminous with a new "rule" under *Teague*. *Teague* involved the similar but slightly different provision in 28 U.S.C. § 2254(e)(2). See, e.g, *United States v. King*, 4 F. Supp. 3d 114, 119 & n.3 (D.D.C. 2013) (noting but not resolving the discrepancy); *United States v. Lobo-Lopez*, No. 1:08-CR-194, 2016 WL 4055639, at *8 (E.D. Va. July 26, 2016) (concluding that the term "right" in § 2255(f)(3) must be equivalent with the term "rule" in the Teague sense).

to the residual clause of the Guidelines, presenting the questions: "1. Whether *Johnson* applies retroactively to collateral cases challenging federal sentences enhanced under the residual clause in U.S.S.G. §4B1.2(a)(2)? [and] 2. Whether *Johnson*'s constitutional holding applies to the residual clause in U.S.S.G. § 4B1.2(a)(2)….?" Petition for Writ of Certiori at i, *Beckles v. United States*, S.Ct. No. 15-8544, Mar. 9, 2016.

Courts' decisions on the validity of non-ACCA residual clauses thus far demonstrate that these decisions are mere applications of *Johnson*. See, e.g., *United States v. Vivas-Ceja*, 808 F3d at 722-23 ("Because §16(b) requires the identical indeterminate two-step approach [invalidated in Johnson], it too is unconstitutionally vague"); *Dimaya v. Lynch*, 803 F.3d at 1119 (section 16(b) "requires courts to 1) measure the risk by an indeterminate standard of a 'judicially imagined 'ordinary case,'' not by real-world-facts or statutory elements and 2) determine by vague and uncertain standards when a risk is sufficiently substantial. Together, under *Johnson*, these uncertainties render [§ 16(b)] unconstitutionally vague"); *In re Hubbard*, No. 15-276, 2016 WL 3181417, at *4 (4th Cir. June 8, 2016) (the government's "contention that the Johnson rule does not render similar language in [§ 16(b)] unconstitutional is an argument about the proper application of the new rule in Johnson," not an argument that goes to whether the habeas vehicle is available at all (emphasis added)); 4 *United States v. Calabretta*, No. 14-3969, 2016 WL 3997215, at *5 (3d Cir. July 26, 2016) (residual clause of the Guidelines unconstitutionally vague "[as] the result of th[e] indeterminate process [described in Johnson]").

Furthermore, the government was plainly aware that Johnson's holding stood to directly impact other residual clauses. It forecast that the holding in Johnson would take down the

---

4 *Hubbard* arose in the context of a request for permission to file a second or successive § 2255 motion in a Guidelines case. The Guideline at issue employed the "crime of violence" definition of 18 U.S.C. § 16.

11

residual clauses of sections 16 and 924(c):

> [While] Section 16 … is *equally susceptible* to [Johnson]'s central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of [violence].

Supp'l Br. of the United States, *Johnson v. United States*, S.Ct. 13-7120, 2015 WL 1284964 at *22-23, Mar. 20, 2015 (emphasis added). Thus, the government itself – in addition to every court to have considered the breadth of *Johnson*'s application outside the ACCA– has viewed the impact of Johnson on other residual clauses as a direct one, without a link required.

In sum, the § 2255(f)(3) question asks when the right at issue had its genesis: where was the dramatic break with past jurisprudence that gave birth to the line of cases. *See Chaidez v. United States*, 133 S. Ct. 1103, 1108-10 (2013) (interpreting when a rule is "new" under Teague). It is clear, under this test, that Johnson overruled the prior Supreme Court precedents of *James* and *Sykes*, broke with past understandings both of the residual clause and of substantive due process, and that future applications of *Johnson* will be viewed as just that: applications of *Johnson*. To the extent one can predict the future, the watershed moment in the *Johnson* line of cases – whether *Teague*'s "new rule" test or some slightly different test applies – is *Johnson*. 5 It is highly doubtful, therefore, that future decisions invalidating other residual clauses will trigger their own limitations periods. Petitioners have only now to press their claims.

---

5 Nor is the watershed moment any earlier. *See Govt. Obj.* at 7 & n.2. In *Chaidez v. United States*, 133 S. Ct. 1103, 1108-10 (2013), the Court found that *Padilla v. Kentucky*, 559 U.S. 356 (2010), which held that the Sixth Amendment requires an attorney to advise a defendant about the risk of immigration consequences, was a "new rule," notwithstanding the long trajectory of the Sixth Amendment right to the assistance of counsel, and then the effective assistance of counsel. The Court, in interpreting *Padilla*, found that it "br[oke] new ground," in removing a "categorical" separation between advice on criminal matters, which was previously within the ambit of the Sixth Amendment guarantee, and advice on collateral consequences, which had not been.

### A.   The Supreme Court has recognized the right that Petitioners assert.

In a related argument, the government asserts that the Supreme Court has not itself applied *Johnson* to invalidate § 924(c)(3)(B) and therefore Petitioners cannot avail themselves of § 2255(f)(3). Yet the government overreads the requirement that the "right asserted" has been "recognized by the Supreme Court." The government proposes a definition of that requirement whereby no habeas petition can proceed unless the question it presents is "self-evident." *Govt. Obj.* at 7. Under this definition, no application of *Johnson* to any new set of facts would be actionable under §2255(f)(3). Cf. *Hopkins*, 268 F.3d at 225 (a Supreme Court case that merely applies an earlier precedent to a new setting does not trigger a new limitations period under §2255(f)(3)). The government's definition would open up a chasm into which the vast majority of *Johnson* claimants would fall: *Johnson*'s limitations period would only extend to ACCA petitioners, while future decisions applying *Johnson* outside of the ACCA would not "initially recognize[]" of any new rights. *Beckles* claimants would be too early until the day *Beckles* was decided, and too late the day after. Instead, the correct reading of § 2255(f)(3)'s "recognized by the Supreme Court" requirement only asks whether the right Petitioners are asserting– the right to be free from conviction and penalty under a statute that calls upon courts to combine an abstract case inquiry with an abstract assessment of risk – has been recognized by the Supreme Court. It has, in *Johnson v. United States*.

Moreover, the government conflates the standard for a first petition under § 2255(f)(3) with the standard for a second or successive one under § 2255(h)(2). The government cites two circuit cases for the proposition that there is disagreement among the lower courts about whether *Johnson* invalidates § 924(c)(3)(B). See *Govt. Obj.* at 6 (citing *In re Gordon*, __ F.3d __, 2016 WL 3648472, at *3 (11th Cir. July 8, 2016); *In re Fields*, __ F.3d __, 2016 WL 3383460, at *1

13

(5th Cir. June 17, 2016)). Yet that question was salient in those cases because they were second or successive petitions under § 2255(h)(2). That standard in those cases asks whether the Supreme Court itself has made a decision retroactive. See *In re Gieswein*, 802 F.3d 1143, 1148 (10th Cir. 2015) (denying permission to file a second/successive application because disagreement among the circuits demonstrated that the Supreme Court itself had not made *Johnson* retroactive); *In re Rivero*, 797 F.3d 986, 989, 991 (11th Cir. 2015) (denying permission to file a second/successive petition in a career offender case because no combination of Supreme Court holdings "necessarily dictate[d]" *Johnson*'s retroactivity, but noting that *Johnson* would have applied to an initial § 2255 petition). Indeed, the U.S. Attorney's office for this district argued to the First Circuit in a second or successive Guidelines and § 924(c) case that *Johnson* was not available on a second or successive petition for this very reason, whereas it would be available in an initial petition. See Transcript of oral argument at 5, *Ahern v. United States*, No. 15-2176, (1st. Cir. May 4, 2016) (arguing that circuit split regarding Johnson's application to the Guidelines was fatal to second/successive petitioner: "We agree that Johnson should be extended [to the Guidelines], but that's a question for direct appeal, or an initial 2255 [not for a second/successive one]").

### B. Johnson has been made retroactive under § 2255(f)(3).

The government agrees, as it must, that if *Johnson* applies to and invalidates § 924(c)'s residual clause, that invalidation is retroactive. See *Govt. Obj.* at 9 n.3; *Bousley v. United States*, 523 U.S. 614, 620 (1998) (decision in *Bailey v. United States*, 516 U.S. 137 (1995), which narrowed the definition of "use" in 18 U.S.C. § 924(c)(1), was substantive, and thus retroactive, because it "[held] that a substantive federal criminal statute d[id] not reach certain conduct" and "plac[ed] conduct beyond the power of the criminal law-making authority to proscribe" (internal

quotation marks and citations omitted)).

## II. JOHNSON APPLIES TO AND INVALIDATES § 924(c)(3)(B).

As explained above, the question whether *Johnson* invalidates § 924(c)(3)(B) is a merits question. See *Hubbard*, supra, 2016 WL 3181417, at *4. Petitioners outlined in their July 15 memorandum the reasons why section 924(c)'s residual clause fails under Johnson's vagueness test and addressed most of the issues that the government raises in its July 28 Objection, couched as a discussion of "prejudice." See *Govt. Obj.* at 17-26. Petitioners respond briefly.

First, the government argues that § 924(c)(3)(B) is distinguishable from §924(e)(2)(B)(ii) because the categorical approach does not apply to § 924(c). See *Govt. Obj.* at 19-22. This is belied by the vast majority of the case law, the parallel provision(s) of the crime of violence definitions generally, and the longstanding assignment of the legal characterization of an offense to the court, as a question of law. See *United States v. Amparo*, 68 F.3d 1222, 1225-26 (9th Cir. 1995) (discussing rationale behind application of the categorical approach to §924(c), the analogous approach under § 924(c)(3)(A), and the assigning to the court the function of determining the legal characterization of an offense); *Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011) (categorical approach applies to § 924(c)); *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (same, stating: "Under this categorical approach, we focus on the intrinsic nature of the offense rather than on the circumstances of the particular crime"); *United States v. Fuertes*, 805 F.3d 485, 497-99 (4th Cir. 2015) (categorical approach applies to §924(c)); *United States v. Jennings*, 195 F.3d 795, 797-98 (5th Cir. 1999) (same, stating: "Using a categorical approach, we ask whether the inherent nature of the offense… is a 'crime of violence'"); *United States v. Moore*, 38 F.3d 977, 979 (8th Cir. 1994) (same), abrogated on other grounds *by Leocal v. Ashcroft,* 543 U.S. 1 (2004); *United States v. Serafin*, 562 F.3d 1105, 1107-08 (10th Cir. 2009)

(same); *United States v. McGuire*, 706 F.3d 1333, 1336-37 (11th Cir. 2013) (same, noting that §924(c)(3)(B) asks about the "nature" of an offense, and noting that whether an offense is a crime of violence is a question of law, reviewed de novo); *United States v. Kennedy*, 133 F.3d 53, 56-57 (D.C. Cir. 1998) (categorical approach applies to § 924(c)); *United States v. Hill*, No. 14-3872-CR, 2016 WL 4120667, at *10 (2d Cir. Aug. 3, 2016) (same); *United States v. Butler*, 496 F. App'x 158 (3d Cir. 2012) (same).

In short, it is clear that the categorical approach applies, and that that approach is the starting point for vagueness under *Johnson*. *See In re Pinder*, No. 16-12084-J, 2016 WL 3081954, at *1 (11th Cir. June 1, 2016) (authorizing second or successive challenge to §924(c)(B)(3) and noting that § 924(c), like the ACCA, utilizes the categorical approach and Johnson's vagueness finding "'rests in large part on [the residual clause's] operation under the categorical approach'" (quoting *Welch v. United States*, 136 S.Ct. 1257, 1262 (April 18, 2016))).

Second, the government argues that § 924(c)(3)(B) is materially narrower in scope than § 924(e)(2)(B)(ii), *Gov. Obj.* at 23-25, including because of the difference between the "serious potential risk" language and the "substantial risk" language. *Id*. at 24. Petitioners addressed these issues at *Memorandum* (D.E. 8) pages 9-13. So as not to be redundant: four circuits have rejected the textual differences between the clauses as sufficient to save the language of the residual clause at § 924(c)(3)(B) from *Johnson* vagueness. See *United States v. Vivas-Ceja*, 808 F3d 719, 720 (7th Cir. 2015) (§ 16(b) void for vagueness under *Johnson*); *Dimaya v. Lynch*, 803 F.3d 1110, 1112 (9th Cir. 2015) (same); *United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir. 2016), reh'g en banc ordered, 815 F.3d 189 (5th Cir. 2016) (same); *Shuti v. Lynch*, No. 15-

16

3835, 2016 WL 3632539, at *8 (6th Cir. July 7, 2016) (same); 6 but see *United States v. Taylor*, 814 F.3d 340, 375-76 (6th Cir. 2016) (§ 924(c)(3)(B) not void for vagueness because it is materially narrower than § 924(e)(2)(B)(ii)); 7 *United States v. Hill*, No. 14-3872-CR, 2016 WL 4120667, at *10 (2d Cir. Aug. 3, 2016) (same).

Next, the government argues that the absence of the confusing list of enumerated offenses from § 924(c)(3)(B) saves it from Johnson's holding. See Govt. Obj. at 25. This argument is addressed in Petitioners' *Memorandum* at 14-15. See *Dimaya*, 803 F.3d at 1118, n.13; *Vivas-Ceja*, 808 F.3d at 723; *Shuti,* 2016 WL 3632539, at *7 (the lack of a list of enumerated crimes in § 16(b) "actually makes its residual clause a broader provision, as it covers every offense that involved a substantial risk of the use of physical force against the person or property of another" (internal quotation marks and brackets omitted) (emphasis in original)); *Hubbard,* 2016 WL 3181417, at *5 (4th Cir. June 8, 2016) (prima facie evaluation noting that "while the Johnson Court noted that the list made the residual clause more vague rather than less so, its reliance on

---

6. See also *United States v. Taylor*, 814 F.3d 340, 394 (6th Cir. 2016) (White, J. dissenting) ("to the extent § 924(c)(3)(B)'s language differs from the ACCA's residual clause, the language differences do not render the provisions meaningfully different under *Johnson*"); *In re Hubbard*, No. 15-276, 2016 WL 3181417, at *5 (4th Cir. June 8, 2016) (under prima facie standard, the "distinction between the ACCA residual clause and § 16(b), as presented by the government, goes more to the breadth of the two clauses than their vagueness"); *In re Pinder*, No. 16-12084-J, 2016 WL 3081954, at *1 (11th Cir. June 1, 2016) (finding under prima facie standard that "Though § 924(c) is phrased a bit differently from § 924(e), the § 924(c) language also requires courts to decide if the offense in question 'naturally involve[s] a person acting in disregard of the risk that physical force might be used against another in committing an offense'"(quoting *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004)).

7 As discussed in Petitioners' *Memorandum*, D.E. 8 at 11-13, the Sixth Circuit's decisions in *Shuti* and *Taylor* are difficult to reconcile. *Taylor*, decided first, held that the residual clause of § 924(c)(3)(B) was not void for vagueness under Johnson. *Shuti* then looked at the residual clause of § 16(b), identical to that of § 924(c)(3)(B), and came out the other way. *Shuti* explained the discrepancy by stating that § 924(c), in contrast to § 16, does not employ the categorical approach, a distinction belied by the express text of *Taylor*. Compare *Shuti*, 2016 WL 3632539, at *8 (6th Cir. July 7, 2016) ("We understand *Taylor*, then, as applying Johnson's real-world conduct exception to uphold the constitutionality of 18 U.S.C. § 924(c)(3)(B)), with *Taylor*, 814 F.3d at 378 (6th Cir. Feb. 11, 2016) ("§924(c)(3)(B)[] requires the application of a categorical approach, which requires courts to look at the ordinary case of the predicate crime"). The later panel in *Shuti* also found that the Supreme Court's intervening decision in *Welch* played a role in the disparate outcomes. See *Shuti,* 2016 WL 3632539, at *8; Petitioners' *Memorandum* at 12.

that issue was limited"); *but see United States v. Hill*, No. 14-3872-CR, 2016 WL 4120667, at *9 (2d Cir. Aug. 3, 2016) (finding that the confusing list of examples, not present in § 924(c)(3)(B), was a "key aspect" leading to the invalidation of § 924(e)(2)(B)(ii)).

Finally, the government argues that § 924(c)(3)(B) is not unconstitutionally vague because there is no record of judicial uncertainty. See *Govt. Obj.* at 25-26. Yet vagueness does not depend on judicial disagreement. See *Vivas-Ceja*, 808 F.3d at 723 ("the chaotic state of the case law was not a necessary condition to the Court's vagueness determination.").

## CONCLUSION

For the reasons stated here, in Petitioners' July 15 Memorandum, and all other filings in their cases, their challenges to their section 924(c) convictions and sentences are properly brought under 28 U.S.C. § 2255(f)(3) and because Johnson invalidates the residual clause of 18 U.S.C. § 924(c)(3)(B), Petitioners are eligible for relief.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date: August 5, 2016 | */s/ Bjorn Lange*<br>Bjorn Lange (N.H. Bar No. 1426)<br>Assistant Federal Public Defender<br>22 Bridge Street, 3rd Floor<br>Concord, NH 03301<br>Tel. (603) 226-7360<br>Bjorn_Lange@fd.org |

*/s/ Jeffrey S. Levin*
Jeffrey S. Levin (N.H. Bar No. 12901)
Assistant Federal Public Defender
22 Bridge Street, 3rd floor
Concord, NH 03301
Tel. (603) 226-7360
Jeff_Levin@fd.org

*/s/ Jonathan R. Saxe*
Jonathan R. Saxe (N.H. Bar No. 8226)
Assistant Federal Public Defender
22 Bridge Street, 3rd Floor
Concord, NH 03301
Tel. (603) 226-7360
Jonathan_Saxe@fd.org

*/s/ Michael J. Iacopino*
Michael J. Iacopino (N.H. Bar No. 1233)
Brennan, Lenehan, Iacopino & Hickey
85 Brook Street
Manchester, NH 03104-3605
Tel. (603)668-8300
miacopino@brennanlenehan.com

*/s/ Cathy J. Green*
Cathy J. Green (N.H. Bar No. 995)
Green & Utter
764 Chestnut Street
Manchester, NH 03104
Tel. (603)669-8446
cathy@green-utter.com

## Certificate of Service

  I hereby certify that the above document was served to all counsel of record on August 5, 2016 and in the manner specified herein: electronically served through CM/ECF electronic filing method.

             */s/ Bjorn Lange*
             Bjorn Lange